UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TAMMY FAULKNER,

    Plaintiff,

        v.                          No. 3:17-cv-1307(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Tammy Fuller's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 25]. The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 29]. After careful consideration of the arguments raised by

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

Plaintiff, and thorough review of the administrative record, the Commissioner's decision is affirmed.[2]

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

---

[2] This case was a close call. Both sides presented well-reasoned, thoughtful briefs. In the final analysis, for the reasons explained herein, the Court simply cannot say that substantial evidence does not support the Commissioner's decision.

## BACKGROUND

**a. Facts**

Plaintiff filed her DIB application on July 9, 2013, alleging a disability onset date of August 31, 2011. She was forty-six years old on the alleged onset date. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015.[3] Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On January 8, 2016, a hearing was held before administrative law judge John Noel ("the ALJ"). On February 26, 2016, the ALJ issued a decision denying Plaintiff's claim. Plaintiff then sought review with the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This action followed.

Plaintiff has not worked since the alleged onset date. She has past work experience as an operations manager for a relocation company and as a business advisor. She has a twelfth grade education.

Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 38]. The Court adopts this statement and incorporates it by reference herein.

**b. The ALJ's Decision**

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the

---

[3] Thus, the relevant period in this case – the period during which Plaintiff must establish disability – is from August 31, 2011 until December 31, 2015.

Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. 22). At Step Two, the ALJ found Plaintiff had the following severe impairments: systemic lupus erythematosus; spine disorder; affective disorder; and anxiety disorder. (R. 22). In addition, the ALJ concluded that Plaintiff had additional medical impairments that were nonsevere, including diabetes, asthma, hypothyroidism, carpal tunnel syndrome, and possible vestibular dysfunction. (R. 22-23). At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 24-26). Next, the ALJ determined Plaintiff retained the following residual functional capacity[4]:

> Plaintiff could perform light work except she could only frequently climb ramps
> and stairs, and occasionally climb ladders, ropes, or scaffolds. She could
> frequently balance, and occasionally stoop, kneel, crouch, and crawl. She could

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

> have only occasional contact with the public. She could perform simple, routine
> tasks. She had judgment limited to simple, work-related decisions, and could deal
> with changes in the work setting limited to simple, work-related decisions.

(R. 26-30). At Step Four, the ALJ found Plaintiff was unable to perform past work. (R. 30). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there are jobs existing in significant numbers in the national economy Plaintiff could perform. (R. 30). Specifically, the VE testified that Plaintiff could perform the positions of hand packager inspector, press operator, and small products assembler. (R. 31). Accordingly, the ALJ found Plaintiff not to be disabled.

## **DISCUSSION**

Plaintiff argues that the ALJ erred by failing to find her carpal tunnel syndrome, diabetes, and vestibular dysfunction severe at the second step of the sequential evaluation process. She also argues that the ALJ did not properly analyze the effect these impairments would have on her ability to perform work-related tasks when assessing her RFC, and that this amounts to prejudicial error. The Commissioner responds that the evidence supports the ALJ's conclusion that these three impairments were nonsevere. The Commissioner also argues that as the ALJ completed the sequential evaluation process, he considered all of Plaintiff's impairments – both severe and nonsevere – in formulating the RFC.

At Step Two, the ALJ must determine the "severity" of a claimant's impairments. Pursuant to the regulations, a medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759,

1999 WL 294727, at *5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)); *see also* SSR 85–28; 20 C.F.R. § 404.1520a. "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step of the evaluation process is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted).

Further, an ALJ's finding that an impairment is not severe at Step Two is harmless error when the ALJ finds other severe impairments and continues with the sequential evaluation, considering the combined impact of all impairments. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.*

The Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments and the formulation of the RFC.

The record is consistent with the ALJ's finding that Plaintiff's carpal tunnel syndrome was not severe. The ALJ recognized that Plaintiff's carpal tunnel syndrome developed in mid-2013, with "arthralgia of PIP joints and wrists bilaterally." (R. 23). The ALJ also observed that Plaintiff did not receive any treatment for this impairment. (R. 23). In formulating the RFC, the ALJ discussed Plaintiff's hearing testimony regarding hand swelling, and noted that treatment records document "minor swelling of her fingers." (R. 27, 28). The ALJ ultimately concluded that Plaintiff could perform the assessed RFC, despite her diagnosis of carpal tunnel syndrome. This conclusion is supported by the evidence of record, especially since that evidence fails to

establish any limitations caused by the carpal tunnel syndrome. For example, hospital records from February of 2013 indicate full strength in the bilateral upper extremities. (R. 405). Plaintiff's neurologist, while noting a diagnosis of carpal tunnel syndrome, reported no symptoms of it upon examination and observed normal strength. (R. 641-43). While wrist pain was noted during several examinations in 2013 and 2014, treatment for carpal tunnel syndrome was offered on only one occasion, and Plaintiff refused it. (R. 628, 631-32, 635, 639, 742). Further, Plaintiff's activities of daily living indicate she can perform basic tasks despite her symptoms, including household chores and personal care. (R. 29). In sum, the medical evidence does not show any limitations caused by Plaintiff's carpal tunnel syndrome such that the ALJ's analysis is improper.

The record is also consistent with the ALJ's finding that diabetes was nonsevere. The ALJ discussed Plaintiff's history of diabetes, and noted that, despite indications of poor glucose control, treatment providers regularly listed no significant symptoms or complications from the condition. (R. 23). The ALJ's analysis accurately characterizes the evidence. Medical records indicate no complications resulting from Plaintiff's diabetes. (R. 291, 301). Plaintiff's diabetes have also consistently been categorized as "fairly stable." (R. 629, 633, 707, 711). There is no evidence of any limitation caused by diabetes such that the ALJ's treatment of it requires remand in this case.

In addition, the record is consistent with the ALJ's evaluation of the effects of vestibular dysfunction. The ALJ properly considered the effects of vertigo, and reasonably concluded it resulted in no more than minimal effects. (R. 23). The ALJ noted a January 2013 vestibular screen that indicated peripheral vestibular involvement with "stability profoundly reduced for her age group." (R. 23). The ALJ also discussed treatment records showing no deficiencies in

7

strength, balance, or gait. (R. 23). This analysis is backed by the evidence. Treatment providers observed no dizziness or weakness, and normal balance. (R. 422, 426, 449, 452). Plaintiff's gait and stance were normal. (R. 449, 452). In fact, in July 2013, Plaintiff refused treatment at the vestibular clinic. (R. 500).

In all, substantial evidence supports the ALJ's findings as to the nonseverity of these impairments, and the ALJ's decision makes clear that the he considered these three impairments throughout his decision, including during the assessment of Plaintiff's RFC. When the Court applies, as it must, the substantial evidence standard, it must affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

## **Conclusion**

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals

from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this  1st  day of August, 2018, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge